## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| V. | ) | |
| | ) | No. 21-cr-52 (TJK) |
| MATTHEW GREENE, | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MOTION TO REVOKE DETENTION ORDER

COMES now the defendant, Matthew Greene, by and through undersigned counsel, and pursuant to 18 U.S.C. § 3145(b), and moves this Honorable Court to revoke the order of detention imposed on April 26, 2021 by the Honorable Miroslav Lovric, United States Magistrate Judge for the Northern District of New York.

### BACKGROUND

On April 21, 2021, Matthew Greene was arrested on a warrant alleging charges arising out of the events at the United States Capitol on January 6, 2021.  The arrest warrant was the result of an indictment filed in this Court on April 16, 2021.  The indictment contains numerous counts against Matthew Greene, as well co-defendants Dominic Pezzola and William Pepe.  *See* ECF Dkt. No. 34.  A detention hearing was held on April 26, 2021 and the Honorable Miroslav Lovric ordered Mr. Greene to be detained based on a finding of dangerousness to the community.  *See* Exhibit 1, Transcript, pg. 79.  Magistrate Lovric also held that Matthew Greene did not pose a risk of flight.  *Id*.  As such, this motion will only address the issue of

1

dangerousness to the community.  The court held that Mr. Greene was subject to a rebuttable presumption that no condition, or combination of conditions, would reasonably assure the safety of the community, pursuant to 18 U.S.C 3142(e)(3).  The Court further held that the government had proven by clear and convincing evidence, that in fact, no conditions of release could assure the safety of the community.  The Order of Detention Pending Trial specifically references the weight of the evidence against the defendant and that he would be subject to a lengthy period of incarceration if convicted.  *See* ECF Dkt. No. 50, pg. 53.

In reaching the conclusion that the defendant is a danger to the community, the Court specifically referenced three firearms that were recovered during the execution of a search warrant at the defendant's home on January 18, 2021.  *See* Exhibit 1, Transcript, pg. 82.  The Court also relied on the defendant's possession of ammunition allegedly purchased after January 6, 2021 to concluded that the defendant was "consciously arming himself."  *Id*. at 84.  The Court also specifically mentioned certain "chats and communication post January 6th" as part of the basis for a finding of dangerousness.  *Id*.

Thereafter, the defendant waived his right to a removal hearing and the Court ordered that the matter be removed to the District of Columbia.  *Id*. at 87.   On May 24, 2021, the defendant appeared with counsel before the Hon. Robin Meriweather and entered a plea of not guilty to all counts of this indictment.  Upon a joint motion of the parties, the Court tolled the time under the Speedy Trial Act until the next hearing scheduled for August 2, 2021 before Hon. Timothy J. Kelly.  *See* ECF Dkt. No. 60.

I.      **Authority for Review**

This Court has the authority to review and reconsider a detention order issued by a magistrate judge.  18 U.S.C. § 3145(b).  This review of the magistrate judge's detention order is *de novo*.  *United States v. Hunt,* 240 F.Supp. 3d 128, 132 (D.D.C. 2017).   Further, the district court must make its own *de novo* determinations without deferring to the legal conclusion of the magistrate court.   *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990) and *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987).

II.     **Legal Standard of Review**

"In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Bail Reform Act mandates that the Court impose the "least restrictive" means of ensuring the appearance of the defendant and safety of the community.  18 U.S.C. § 3142(c)(1)(B).  Further, the imposition of detention should be imposed only in "rare circumstances" and any "doubts regarding the propriety of release should be resolved in the defendant's favor."  *United States v. Gebro*, 948 F.2d 118, 1121 (9th Cir. 1991).

At the detention hearing, the government has the burden of establishing by clear and convincing evidence that no conditions, or combination thereof, will reasonably assure the safety of the community, or, by a preponderance of the evidence, that no condition will reasonably assure the defendant's return to Court.  18 U.S.C 3142 (e-f).  "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community'".  *United States v. Vasquez-Benitez,* 919 F.3d 546, 550 (D.C. Cir. 2019).

Pursuant to 18 U.S.C. § 3142 (g)(1)-(4), the court's dangerousness analysis is based on four statutory factors: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of danger to any person or the community that would be posed by the person's release."

"Thus, a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021).

## III.   <u>Argument</u>

The government failed to prove by clear and convincing evidence that Mr. Green poses an articulable threat to an individual or the community.   The following factors must be considered:

## 1.  Nature and circumstance of the offenses charged

There is no doubt that the events of January 6, 2021 at the United States Capitol were serious in nature.   The allegations in this indictment, if proven beyond a reasonable doubt, could result in a lengthy prison sentence.

However, the defendant submits that of equal importance are the allegations not in the indictment.   A close reading of the Overt Acts portion of the indictment provides crucial insight into Mr. Greene's alleged culpability.   There is no allegation that Mr. Greene ever entered the United States Capitol, in stark contrast to his co-defendants, Dominic Pezzola and William Pepe.

*See* ECF Dkt. No. 34.  Significantly, Mr. Pepe was not held in detention after his arrest on this indictment.

There is no allegation that Mr. Greene assaulted a police officer, or any other person for that matter.  *Id*.  In fact, at one point Mr. Green stopped to render aid to a fellow protestor who had been shot in the face with a police pepper ball projectile.  The government has corroborated that this exchange was captured on an officer's body worn camera.

There is no allegation that Mr. Greene destroyed any government property.  The government does allege that Mr. Greene "aided and abetted" co-defendant Dominic Pezzola in breaking a window with a police shield.  *Id*.  However, this theory is obviously questionable given the numerous videos of Mr. Pezzola circulated in the media, by himself, breaking the window in question.  Mr. Greene is nowhere in view.

**2.  Weight of the evidence**

During the detention hearing, the government offered pictures showing Mr. Greene present at the Capitol on January 6th, entering into a restricted area outside the building.  This evidence is clear.  *See* Exhibit 1, Transcript, pg. 35-39.  Once again, however, there is seemingly no other proof of any further criminal conduct by Mr. Greene.

**3.  History and characteristics of the defendant**

Matthew Greene is thirty-four years old and has never been arrested or convicted of any crime.  He was born in Syracuse, New York and graduated from East Syracuse-Minoa High School.  He attended two years of college at Full Sail University in Florida before enlisting in the Army National Guard.  In 2010, Mr. Greene was called to active duty, served in Afghanistan and was later honorably discharged.  Currently, he is a partner in a multi-million dollar digital

graphic design company, that employees a diverse workforce in several locations across the county.  Mr. Greene has been married for one year.

**4.  Nature and seriousness of the danger to the community**

As detailed above, Mr. Greene has led a law-abiding life for thirty-four years and is a highly successful member of his community.  He poses no danger to any person, or group of people.  However, during the detention hearing, the government raised questions about Mr. Greene's dangerousness.

First, the government executed a search warrant at Mr. Greene's home on January 18, 2021.  Among the items recovered were three firearms, eight high-capacity magazines and several electronic receipts for the purchase of ammunition.  *Id.* at pg. 22-35.  The firearms recovered were a .45 caliber pistol, a .9 mm pistol and an AR-15 rifle.  Although Mr. Green does not have a pistol permit in New York state, each of the firearms were purchased legally.  The .45 caliber pistol is a commemorative piece purchased through Mr. Greene's Army unit in Afghanistan.  Mr. Greene had the appropriate licensing documentation when he initially took possession of the pistol in Illinois, where he was residing at the time.  Similarly, the .9 mm handgun was legally purchased by Mr. Greene while he was residing in Rhode Island.  Finally, the AR-15 rifle was purchased lawfully in Iowa.  The hearing court made reference to the possession of these firearms constituting felony offenses under New York law in making its dangerousness determination.  *Id*. at 82.  Ironically, possession of the two handguns would not have even made Mr. Greene eligible for detention under New York's bail statute.  *NY CPL* § 530.20(1)(b)(i).  It is also highly unlikely, given his complete lack of criminal history, that a state court would have detained Mr. Greene for possession of the AR-15 rifle.

The government also pointed to the purchase of ammunition by Mr. Greene after January 6, 2021 as an indicator of his dangerousness. *Id*. at 32. However, the government failed to demonstrate that this action was related, in any way, to the events of January 6th. Mr. Greene was simply buying ammunition to be used at the rifle range. The Covid-19 pandemic had created a shortage of ammunition, like many other consumer items, and the defendant was simply taking advantage of a favorable price. The purchase of ammunition for an AK-47, as referenced by the government at the hearing, was simply a mistake by Mr. Greene. *Id*. at 34. He intended to purchase additional ammunition for the AR-15 rifle and ordered the wrong type. This was not a "straw purchase", nor was it an indicator of any broader plan of violence. *Id*. at 58.

Significantly, after the execution of the search warrant on January 18, 2021, the government left behind an additional rifle, a shotgun and the ammunition. *Id*. at 27. Yet, over three months later, at the detention hearing, the government took the position that Mr. Greene's possession of the confiscated weapons was a strong indicator of his dangerousness. If Mr. Greene was such a danger, why was he left in possession of several other firearms? Apparently, the government did not believe Mr. Greene was a danger to the community on January 18th, 2021, despite the fact that the search warrant application revealed the same alleged facts contained in this indictment. This is particularly significant given that Mr. Greene was not arrested for another three months.

Second, the government's application for detention also relied on messages, attributed to Mr. Greene, sent to associates through a messaging application. While these messages do reference tactics used by the Taliban and being ready to "use those tactics", it is important to note that there was no specific threat against an individual or group. *Id.* at 43. The messages are

general statements urging readiness, not a proactive call to action.  Most significantly, these messages are words written after a historically tumultuous election, at a time when millions of Americans were expressing anger and discontent over the results.  Attributing undue weight to these informal statements creates the real danger that Mr. Greene will be detained for his free expression of ideas, before he has been convicted of any offense.

Third, during the detention hearing, the government pointed to Mr. Greene's affiliation with the Proud Boys as another factor contributing to his dangerousness.  *Id*. at 16.  Prior to January 6, 2021, Mr. Greene's association with the Proud Boys was very limited.  He attended approximately three events from November 2020 through January 2021.  Mr. Greene had the lowest status in the organization and did not occupy any type of leadership role.  Once again, allowing this affiliation to overshadow the more concrete factors outlined above would amount to detaining Mr. Greene for his association with a group, while he stands accused, but not convicted, of any offense.  Further, the defendant has concluded that his personal beliefs and ethics do not align with those of the Proud Boys.  Mr. Greene he is anxious to publicly disavow his brief membership in this group.

Finally, the continued detention of Mr. Greene, based on his perceived dangerousness, must be considered relative to other cases where defendants have been released.  As mentioned earlier, this is especially significant because there is no allegation that Mr. Greene entered the Capitol, caused injury to any person or damaged any property.  In *United States v. Chad Jones*, 1:21-mj-076, Mr. Jones was released after being charged with assault on a police officer with use of a deadly weapon or dangerous weapon or infliction of bodily injury.  In this case, the government alleges that he used a flagpole to repeatedly strike and break glass of the doorway where Ashley Babbitt was shot and killed.  The government did not request Mr. Jones' detention

and Magistrate Judge Harvey released him on special conditions.  Similarly, in *Unites States v. Vitali Gossjankowski*, 1:21-cr-123, the defendant has been charged with assaulting a federal officer with a dangerous weapon (taser).  The statement of facts in support of the complaint describes that an officer near the defendant suffered a heart attack after being "tased" multiple times in the neck.  The government did not object to his release.  Finally, in *United States v. Mark Leffingwell*, 1:21-cr-005, the defendant was charged with Assault on a Federal Officer for allegedly pushing past a wall of officers and repeatedly punching an officer with a closed fist. He was also released on conditions.[1]

## IV.  **Conclusion**

Mr. Greene is prepared to abide by any conditions imposed by the Court to avoid his continued pre-trial detention.  In this particular case, given all the factors above, the "least restrictive means" requires that the defendant be released from detention.  Mr. Greene respectfully request that the Court revoke the order of detention in this matter and release him on conditions.

---

[1] *See also United States v. Gina Bisignano*, 21-cr-036 (CJN) (alleged to be a "leader" of the insurrection and allegedly yelled, "We need weapons!" while pushing past the police line); *United States v. Christopher Alberts,* 1:21-cr-026 (CRC) (found carrying a fully loaded handgun and a bullet-proof vest).

Dated: June 15, 2021                    Respectfully submitted,

                                        */s/ Michael Kasmarek, Esq.*

                                        _____

                                        Bar roll number: 702427

                                        Attorney for the Defendant

                                        Kasmarek Law Office, PLLC

                                        440 East Washington Street

                                        Syracuse, New York 13202