IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA           CR No. 1:21-cr-00052-TJK-3

v.                                 Washington, D.C.
                                   Wednesday, December 22, 2021
MATTHEW GREENE,                    2:00 p.m.

                Defendant.
- - - - - - - - - - - - - - - - x
_____

            TRANSCRIPT OF PLEA AGREEMENT HEARING
        HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
                UNITED STATES DISTRICT JUDGE
_____

APPEARANCES VIA VIDEOCONFERENCE:

For the United States:     Erik M. Kenerson, Esq.
                           U.S. ATTORNEY'S OFFICE FOR THE
                           DISTRICT OF COLUMBIA
                           555 Fourth Street, NW
                           Suite 11-449
                           Washington, DC 20530
                           (202) 252-7201


For the Defendant:         Michael A. Kasmarek, I, Esq.
                           Michael Spano, Esq.
                           KASMAREK LAW OFFICE, PLLC
                           440 East Washington Street
                           Syracuse, NY 13202
                           (315) 552-5620


Court Reporter:            Timothy R. Miller, RPR, CRR, NJ-CCR
                           Official Court Reporter
                           U.S. Courthouse, Room 6722
                           333 Constitution Avenue, NW
                           Washington, DC 20001
                           (202) 354-3111


Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

1          **P R O C E E D I N G S**

2          THE DEPUTY CLERK:  We are on the record in

3     criminal matter 21-52, United States of America v. Defendant

4     3, Matthew Greene.

5          Present for the Government is Erik Kenerson;

6     present for the defendant is Michael Kasmarek; also present

7     is the defendant, Mr. Greene.

8          THE COURT:  All right.  Well, good afternoon to

9     everyone.

10          Mr. Greene is here to enter a plea of guilty to

11     Counts 1 and 2 of the first superseding indictment charging

12     him with conspiracy, in violation of 18 United States Code

13     371; and obstruction of an official proceeding, in violation

14     of 18 United States Code 1512(c)(2).

15          Mr. Kasmarek, is that correct?

16          MR. KASMAREK:  It is, Judge, and I would also just

17     note Mr. Spano -- Michael Spano's here with me.  We recently

18     completed his pro hac vice motion which the Court granted.

19     So he's here, as well.  And yes, Judge, we are here to enter

20     pleas to those two counts.

21          THE COURT:  Very well.  Welcome, Mr. Spano.

22          MR. SPANO:  Yes, Judge.  Thank you.

23          THE COURT:  Before we proceed, I guess I want to

24     just raise a couple of preliminary matters.

25          I have right now, and I'm prepared to go forward

 1    with, the waiver and the plea agreement and the factual

 2    basis all signed by -- I believe it was -- you,

 3    Mr. Kasmarek, on behalf of Mr. Greene.  I do expect to have

 4    submitted to me to be filed on the docket versions of this

 5    -- copies of this that are signed by the defendant himself.

 6    I'm certainly going to ask him here today whether he's read

 7    those documents and has authorized his attorney to sign on

 8    his behalf, but given the parties wanting to come in, I --

 9    again, I'm prepared to proceed, but I do expect to receive

10    -- to have -- I guess it can be either party, but one party

11    or the other file versions of these that are signed by

12    Mr. Greene.

13              Is that -- Mr. Kasmarek, do you foresee any

14    difficulty getting that done?

15              MR. KASMAREK:  No, Judge, not at all.  And we

16    appreciate the Court being willing to proceed in this

17    manner.  We will endeavor to get copies of the documents

18    with Mr. Greene's signature, and I'll certainly coordinate

19    with Mr. Kenerson and make sure they're filed.

20              THE COURT:  How long do you think -- I mean, I

21    should have pulled up a calendar.  How long do you think

22    that will take?  I know we have the holidays in here.  I'd

23    like to at least get a deadline established so I know when

24    to expect them by.

25              MR. KASMAREK:  Judge, the mail with respect to

 1    reaching Mr. Greene is sometimes a little bit difficult just

 2    because it has to go through the correctional facility's

 3    process.  That being said, Judge, I think two weeks would

 4    allow us enough time to get it done.

 5              THE COURT:  All right.  Why don't I just say by --

 6    two weeks would be January 5th.  We build in a few more days

 7    just, you know, because of the problems you mentioned.

 8    Let's set the deadline to be January 7th with just a few

 9    more days, by that Friday.  All right.

10              MR. KASMAREK:  Great.  Thank you, Judge.

11              THE COURT:  Very well.  Absolutely.

12              THE DEPUTY CLERK:  Your Honor --

13              THE COURT:  Yes?

14              THE DEPUTY CLERK:  Your Honor, I just want to

15    interject.  If counsel could send those documents to me,

16    because I need to put them on the docket instead --

17              THE COURT:  Oh, all right.

18              THE DEPUTY CLERK:  -- of them filing them on the

19    docket.  So if they could just provide them to me by that

20    date, then I'll make sure that they go on the docket.

21              THE COURT:  Perfect.  If you can email them to

22    Ms. Harris, that would be perfect.

23              Thank you, Ms. Harris --

24              MR. KASMAREK:  I will do that, Judge.

25              THE DEPUTY CLERK:  You're welcome.

1          THE COURT:   -- for chiming in.

2          There's two other quick things I want to mention.

3          One is, as I do in every plea, I had the

4    Government submit to chambers, in addition to the documents

5    we have here, a document laying out the elements of the

6    various offenses at issue.  And I just want to make sure --

7    and, Mr. Kenerson, the document you provided for the 1512(c)

8    charge rightfully laid out, you know, the first element of

9    that, that the defendant obstructed, influenced, or impeded

10   any official proceeding; and then the second element, that

11   the defendant acted corruptly.  You added, With

12   consciousness of wrongdoing.  And I think -- here's what I

13   -- how I'd like to proceed.  I don't think it's necessary to

14   further slice and further define "corruptly" at least at

15   this point.  I have no problem -- and here, I'll just pause

16   and say you all don't have the benefit of my impending

17   opinion laying out my thoughts on, you know -- other judges

18   have done so in the last few days on why this charge is not

19   unconstitutionally vague as applied to this conduct.  But my

20   thought is why don't we proceed -- because I don't think

21   it's necessary to get into anything further, why don't we

22   just proceed acknowledging the statutory elements that are

23   laid out in the statute without further defining

24   "corruptly."  And, again, as I said, based on the factual

25   basis I have here, I have no problem concluding that I have

1    a factual basis for the plea for the 1512 charge.

2              Mr. Kenerson, do you -- are -- is that a

3    reasonable way to proceed from your perspective?

4              MR. KENERSON:  I think that's reasonable, Your

5    Honor.  Yes.  Thank you.

6              THE COURT:  All right.  Mr. Kasmarek, any problem

7    proceeding that way?

8              MR. KASMAREK:  No objection, Judge.  Thank you.

9              THE COURT:  All right.

10             And one other quick little housekeeping note

11   somewhat similar to that but not exactly.  The Section

12   231(a)(3) count -- and here, the defendant is only pleading

13   guilty to conspiring to violate that charge -- the third

14   element of that is that the civil disorder has to, in some

15   way or degree -- obstructed, delayed, or adversely affected

16   the conduct or performance of a federally protected

17   function.  In my view -- and I think Judge Mehta mentioned

18   this briefly in his opinion, although it wasn't squarely

19   presented to him -- the federally protected function here is

20   the Secret Service's statutorily prescribed duty to protect

21   the Vice President as opposed to the congressional

22   certification, and the Government argued both of those to me

23   in other cases.  I think I have a factual basis, based on

24   what you all have submitted, to proceed.  The statement of

25   facts does recount how the Vice President was President

```
 1    [sic], how he had to be evacuated from the Capitol,
 2    etcetera, and so I don't have any problem proceeding in that
 3    way.  I just want to make sure both parties are comfortable
 4    with that.
 5              Mr. Kenerson?
 6              MR. KENERSON:  Yes, Your Honor.  I think the
 7    Secret Service function is sufficient to satisfy the
 8    statute.  Saying -- setting aside whether the Government
 9    could prove it otherwise, that is sufficient.  So we're
10    happy going that way.
11              THE COURT:  All right.  Mr. Kasmarek, any --
12    again, just, I guess, same question.  Any concerns about
13    proceeding based on what I just said?
14              MR. KASMAREK:  No, Judge, we don't have an
15    objection to proceeding in that manner.  Thank you.
16              THE COURT:  All right.  Very well.
17              All right.  All of that put to bed, we have a few
18    other little housekeeping matters we have to deal with in
19    terms of proceeding via videoconference.
20              First, Chief Judge -- I'll just mention that Chief
21    Judge Howell, in her most recent standing order on the topic
22    entered on November 22nd which is Standing Order 21-70, has
23    authorized courts to conduct plea hearings via
24    videoconference, obviously, because of the COVID-19
25    pandemic.
```

1          Second, I have to conclude that the case -- or the

2    proceeding cannot be further delayed without serious harm to

3    the interests of justice, and given that Mr. Greene has been

4    detained since, I believe it was, April; he wants to move

5    forward with this agreement; the agreement does contain a

6    cooperation component; so I think, based on all of those

7    things, I can conclude, again, that this hearing cannot be

8    further delayed without serious harm to the interests of

9    justice.

10          And finally, the defendant has to consent to enter

11   his plea via video.

12          So I turn to you, Mr. Kasmarek, to confirm that

13   your client does consent to go forward here today via video.

14          MR. KASMAREK:  He does, Judge.  And we certainly

15   agree with the factors that the Court just pointed to with

16   respect to us proceeding in this manner.  Mr. Greene

17   understands his rights with respect to proceeding in this

18   manner and he wishes to move forward with the plea

19   virtually.

20          THE COURT:  All right.  Very well, then.  I'll

21   just ask Ms. Harris to administer the oath to Mr. Greene.

22          THE DEPUTY CLERK:  Mr. Greene, would you please

23   raise your right hand.

24          Do you solemnly swear or affirm that you will well

25   and truly answer all questions propounded to you by the

1    Court?

2                    THE DEFENDANT:  I do.

3                    THE DEPUTY CLERK:  I'm sorry?

4                    THE DEFENDANT:  I do.

5                    THE DEPUTY CLERK:  Thank you.

6                    THE COURT:  All right.  Mr. Greene, do you

7    understand that you're now under oath and if you do not

8    answer my questions truthfully, you could be prosecuted for

9    perjury or for making a false statement?

10                   THE DEFENDANT:  I do, Your Honor.

11                   THE COURT:  All right.  Now, this is a very

12   important hearing.  So I need you to listen closely to me.

13                   It's important because in order for me to accept

14   your guilty plea, I need to be satisfied that you're capable

15   of understanding all the implications that come with

16   pleading guilty and that you are entering your plea

17   voluntarily.

18                   It's also important because whenever anyone

19   chooses to plead guilty, they give up some of their

20   constitutional rights, and I want to make sure you

21   understand the rights you're giving up by deciding to plead

22   guilty today.

23                   And finally, this hearing is also important

24   because before you plead guilty, I want to make sure that

25   you understand the charges against you, the plea agreement

1    that your lawyers have negotiated with the Government, and

2    exactly how sentencing will work.

3            So if -- at any point during our hearing today, if

4    there's something you don't understand, let me know and I'll

5    try to explain it better.  And in a real case where it might

6    be necessary, we might even be able to have you consult with

7    your lawyers if we take a break.

8            So let me start with a few questions.

9            Mr. Greene, how old are you, sir?

10           THE DEFENDANT:  Thirty-four, Your Honor.

11           THE COURT:  And how far did you go in school?

12           THE DEFENDANT:  I believe it was 10th grade before

13   I dropped out, Your Honor.

14           THE COURT:  All right.  Can you read and write,

15   sir?

16           THE DEFENDANT:  I can.

17           THE COURT:  And where were you born?

18           THE DEFENDANT:  Syracuse, New York.

19           THE COURT:  And are you a U.S. citizen today?

20           THE DEFENDANT:  I am, Your Honor.

21           THE COURT:  All right, you've told me that you are

22   a U.S. citizen.  Do you understand that if you were not --

23   if you were not -- a U.S. citizen, pleading guilty to these

24   offenses could affect your immigration status and could

25   result in your deportation, exclusion from the United

1    States, or denial of citizenship under our immigration laws?

2    Do you understand all that?

3              THE DEFENDANT:  I do, Your Honor.

4              THE COURT:  Have you taken any alcohol, drugs, or

5    medicine in the last 48 hours that could affect your ability

6    to understand and follow our proceedings here today?

7              THE DEFENDANT:  No, I have not.

8              THE COURT:  Have you received any treatment

9    recently for any type of mental illness or emotional

10   disturbance?

11             THE DEFENDANT:  No, Your Honor.

12             THE COURT:  And let me ask both Mr. Kasmarek and

13   Mr. Kenerson, do either of you have any reason to question

14   Mr. Greene's competence to plead guilty at this time?

15             Mr. Kasmarek?

16             MR. KASMAREK:  We do not, Your Honor.

17             THE COURT:  And, Mr. Kenerson?

18             MR. KENERSON:  No, Your Honor.

19             THE COURT:  All right.  I do find, then,

20   Mr. Greene fully competent and capable of entering an

21   informed plea.

22             Now, Mr. Greene, I want to explain to you those

23   rights we mentioned -- I mentioned before and make sure you

24   understand them.

25             I have here in front of me a signed waiver of

1    trial by jury form in front of me that I'm holding up to the

2    screen, (indicating.)  Now, ordinarily, Mr. Greene, I'd ask

3    you if that was your signature above the line -- on the line

4    that says, Defendant.  But it's not, is it, in this

5    particular case?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  Okay.  It's -- whose is it?

8            THE DEFENDANT:  It's my defense attorney, Michael

9    Kasmarek.

10           THE COURT:  Okay.  And did you give him permission

11   to sign this document on your behalf?

12           THE DEFENDANT:  I did, Your Honor.

13           THE COURT:  Okay.  And is it your intention to

14   give up your jury trial rights in this matter?

15           THE DEFENDANT:  Yes, it is, Your Honor.

16           THE COURT:  Okay.  Let's discuss what the trial

17   rights consist of.

18           So you have a right, Mr. Greene, to plead not

19   guilty and to have a jury trial in this case.  Do you

20   understand that you have the right to plead not guilty?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  And if you were to plead not guilty,

23   you would have a jury trial, and that means that 12 citizens

24   of the District of Columbia would determine your guilt or

25   your innocence based upon evidence presented in my

 1     courtroom.  Do you understand that, sir?

 2                 THE DEFENDANT:  Yes, Your Honor.

 3                 THE COURT:  And do you understand that if you had

 4     a trial, you would have a right to be represented by your

 5     lawyer at that trial and at every other stage of the

 6     proceeding?

 7                 THE DEFENDANT:  Yes, Your Honor.

 8                 THE COURT:  And do you understand that lawyer

 9     could make motions on your behalf, including motions to

10     exclude evidence or statements from the trial?

11                 THE DEFENDANT:  Yes, Your Honor.

12                 THE COURT:  And do you understand that at a trial,

13     you would have the right, through your lawyer, to confront

14     and cross-examine any witnesses against you?

15                 THE DEFENDANT:  Yes, Your Honor.

16                 THE COURT:  Do you understand that at a trial, you

17     would have the right to present your own witnesses and that

18     you would have the right to require or compel them to

19     testify in your defense?

20                 (Brief pause.)

21                 Do you understand that, sir?

22                 THE DEFENDANT:  Yeah, I -- yes, Your Honor.

23                 THE COURT:  Okay.  Do you understand that if there

24     were a trial, you would have the right to testify and to

25     present evidence on your own behalf if you wanted to but

```
1    that no one could force you to testify or present any

2    evidence if you did not want to because you have the right

3    to remain silent at your trial?  Do you understand all of

4    that?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  And if you were to make a decision not

7    to testify at trial, you could request that the jury be told

8    that that decision could not be held against you.  Do you

9    understand that right, as well?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  And do you understand that unless and

12   until I accept your guilty plea, you are presumed by the law

13   to be innocent because it is the Government's burden to

14   prove your guilt beyond a reasonable doubt and until it does

15   you cannot be convicted at trial?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  And do you understand that if you went

18   to trial and were convicted, you would have a right to

19   appeal and to have a lawyer help you prepare that appeal?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  And do you understand that by pleading

22   guilty, you are giving up all the rights I just explained to

23   you, with a few exceptions as to your appeal rights that we

24   will go over, because there will be no trial?  Do you

25   understand that?
```

 1              THE DEFENDANT:  I do, Your Honor.

 2              THE COURT:  All right.  And do you also understand

 3     that by pleading guilty to felony offenses, you may later be

 4     deprived of civil rights such as the right to vote, the

 5     right to hold public office, the right to serve on a jury,

 6     and the right to possess any kind of firearm?  Do you

 7     understand that?

 8              THE DEFENDANT:  I do, Your Honor.

 9              THE COURT:  And finally, having discussed all

10     these rights with you, do you still want to plead guilty in

11     this case and give up these rights?

12              THE DEFENDANT:  I do, Your Honor.

13              THE COURT:  All right.  Mr. Greene, your attorney

14     and the prosecutor have also given me another document that

15     is -- well, it actually -- it's funny.  It doesn't have a

16     title.  Usually, they have a title on them that say

17     "statement of facts" or something like that.  But it's a

18     document that I'm going to hold up the first page,

19     (indicating.)  The -- it -- with it -- it begins with a

20     background section and it's about 10 pages or so long.  And

21     it describes what the Government would be prepared to prove

22     about your criminal conduct if this case were to proceed to

23     a trial.  Again, ordinarily, I'd ask if -- and this is the

24     last page of the document that I'm holding up for -- to the

25     computer for you to see, (indicating.)  Again, ordinarily,

1  I'd ask if that's your signature on the docket -- on the

2  document.  Again, that's not your signature; is it,

3  Mr. Greene?

4        THE DEFENDANT:  No, it's not, Your Honor.

5        THE COURT:  All right.  And, again, is this your

6  lawyer's signature on the document on your behalf?

7        THE DEFENDANT:  Yes, it is, Your Honor.

8        THE COURT:  And did you give your lawyer

9  permission to sign your name on your behalf?

10        THE DEFENDANT:  I did, Your Honor.

11        THE COURT:  Okay.  And have you read this document

12  and discussed it fully with your lawyer?

13        THE DEFENDANT:  I have, Your Honor.

14        THE COURT:  And, Mr. Greene, is everything in that

15  document true and accurate?

16        THE DEFENDANT:  It is, Your Honor.

17        THE COURT:  All right.  Mr. Kenerson, would you

18  please state the elements of the charges to which the

19  defendant is pleading guilty and consistent with our earlier

20  discussion.

21        (Brief pause.)

22        MR. KENERSON:  Just one moment, Your Honor.  I'm

23  bringing them up.

24        (Brief pause.)

25        The elements of Count 1, conspiracy, are that the

1    defendant entered into an agreement with at least one other

2    person to commit a specific offense -- in this case,

3    obstruction of an official proceeding and obstructing,

4    interfering, or resisting with certain law enforcement

5    officers during the course of a civil disorder -- that the

6    defendant knowingly participated in the conspiracy with the

7    intent to commit the offense; and that at least one overt

8    act was committed in furtherance of the conspiracy.

9         As to Count 2, obstruction of an official

10   proceeding, the elements are that defendant obstructed,

11   influenced, or impeded any official proceeding; and that the

12   defendant acted corruptly.

13        With regards to the civil disorder violation that

14   is the other object of the conspiracy, the elements of that

15   substantive offense would be that the defendant knowingly

16   committed an act or attempted to commit an act with the

17   intended purpose of obstructing, impeding, or interfering

18   with one or more law enforcement officers; that at the time

19   the defendant's -- of the defendant's actual or attempted

20   act, the law enforcement officer or officers were engaged in

21   the lawful performance of their official duties incident to

22   and during a civil disorder; and, third, that the civil

23   disorder in any way or degree obstructed, delayed, or

24   adversely affected the conduct or performance of any

25   federally protected function.  In this case, that of the

```
 1    United States Secret Service protecting the Vice President

 2    of the United States.

 3              THE COURT:  All right.  Mr. Greene, do you

 4    understand the charges against you, sir?

 5              THE DEFENDANT:  I do, Your Honor.

 6              THE COURT:  And have you reviewed the first

 7    superseding indictment against you and discussed that

 8    document and the charges in that document and the case in

 9    general with your counsel?

10              THE DEFENDANT:  I have, Your Honor.

11              THE COURT:  And, Mr. Kasmarek, do you agree that

12    the Government could prove all the elements of the offenses

13    to which Mr. Greene is pleading guilty beyond a reasonable

14    doubt?

15              MR. KASMAREK:  I do agree, Judge.

16              THE COURT:  All right.  The parties have also

17    submitted a written letter outlining the plea agreement.

18    Before the -- we discuss the terms of the agreement, let me

19    just ask Mr. Kenerson whether this agreement reflects the

20    most favorable or lenient plea offer made to the defendant

21    in this case.

22              MR. KENERSON:  It is, I suppose, the only plea

23    offer that has been made to the defendant in this case.  So

24    yes.

25              THE COURT:  That answers that question.  Correct.
```

 1          All right.  Mr. Greene, I'm showing you -- this is

 2     the last document I'll awkwardly hold up to the camera for

 3     you to see, (indicating.)  It's a copy of the plea agreement

 4     in your case.  It's a letter to your lawyers, the first page

 5     of which looks like this, (indicating.)  And, again, the

 6     last page, similar to the other documents we've seen, has a

 7     signature page that, again, has a space for you to sign.

 8     Again, this document is signed by Mr. Kasmarek on your

 9     behalf; is that correct?

10          THE DEFENDANT:  It is, Your Honor.

11          THE COURT:  And, again, you gave him permission to

12     sign this document on your behalf; is that correct?

13          THE DEFENDANT:  I did, Your Honor.

14          THE COURT:  Okay.  Did you read and understand the

15     document before Mr. Kasmarek signed it on your behalf?

16          THE DEFENDANT:  I did, Your Honor.

17          THE COURT:  And have you had enough time to talk

18     with him about the document?

19          THE DEFENDANT:  Yes, I did, Your Honor.

20          THE COURT:  All right.  We're going to discuss the

21     terms of the plea agreement now.  We're not going to mention

22     every term -- every single thing in there.  But you

23     understand that as long as it's in that agreement, even if

24     we don't talk about it here today, you are still bound by

25     it?  Do you understand --

 1                 THE DEFENDANT:  I do, Your Honor.

 2                 THE COURT:  Okay.  Mr. Kasmarek, will you briefly

 3       summarize, at least at a high level, the terms of the plea

 4       agreement.

 5                 MR. KASMAREK:  Yes, Judge.

 6                 In exchange for Mr. Greene admitting

 7       responsibility with respect to the two counts outlined by

 8       Mr. Kenerson, we are agreeing to a point allocation as to

 9       each of the offenses.  For the offense for Count 1, the

10       points were a total of 25.  For Count 1 -- I'm sorry, 18

11       U.S.C. 231, the agreement was for a total of 16.  We had

12       agreed to a three-point potential reduction for

13       responsibility acceptance for a total estimated offense

14       level of 22.  Mr. Greene has no prior criminal history.  So

15       there was no additional points on there.  And based on that,

16       Judge, the guideline range was 41 to 51 months.  There is a

17       fine range outlined of potentially 15,000 up to 150,000.

18       Judge, there is part of this -- a restitution agreement

19       which I believe, without finding it -- and Mr. Kenerson can

20       correct me if I'm wrong -- I believe it was somewhere in the

21       neighborhood of $2,000, and that was something that was

22       spread across many of the prosecutions that are taking place

23       with respect to the larger case.  Judge, there is also --

24       yes, it is 2,000.  There is also a cooperation agreement in

25       here which allows that, at the time of sentence, the

1    Government may make a recommendation about a further point

2    reduction based on what has taken place and what may take

3    place in the future with respect to Mr. Greene.  I should

4    also note, too, Judge, that Mr. Kenerson and I and Mr. Spano

5    have discussed the possibility that even after Mr. Greene is

6    sentenced and that he is committed potentially to the Bureau

7    of Prisons or he is on some sort of supervised release, that

8    he may be able to come back if the Government requires more

9    cooperation and then a motion would be made to allow him to

10    be resentenced to something that is in line with his

11    cooperation at that point.

12           Judge, I believe that that broadly defines the

13    terms that are in the 13-page agreement.

14           THE COURT:  All right.  Very well.  I'll also add,

15    obviously, it -- the agreement contemplates, for the charges

16    in the first amended indictment to which he's not pleading

17    guilty, that those would be dismissed at sentencing;

18    correct?

19           MR. KASMAREK:  That is correct, Judge.  And I

20    should also note -- and Mr. Kenerson and I have had some

21    discussions about this -- relative to the points and the

22    guideline range -- and I'm sure the Court is going to

23    address this with Mr. Greene -- it's our intent to argue

24    that in Mr. Greene's case, a reduction in the total number

25    of months or any additional prison time is something that

1    will be appropriate.  And certainly, Judge, we intend to do

2    that based on our sentencing memorandum, and also, when the

3    Court allows us to be heard at sentencing.

4            THE COURT:  Very well.

5            I do accept that this plea agreement, then, is of

6    the type authorized by Federal Rule of Criminal Procedure

7    11(c)(1)(A) and specifies that the Government will not bring

8    other charges for the conduct set forth in the factual basis

9    for plea and will request that the Court dismiss other

10   charges -- the other charges pending in the indictment at

11   the time of sentencing.

12           Mr. Greene, let me just -- I'll start walking now

13   through the different aspects of the plea agreement.

14           First, have you and your lawyer talked about

15   sentencing and how the statute -- both the statute --

16   statutes at issue and the sentencing guidelines may apply in

17   your case?

18           THE DEFENDANT:  We have, Your Honor.

19           THE COURT:  Okay.  Now, do you understand that if

20   I accept your guilty plea in this case, for Count 1, which

21   is a violation of 18 United States Code Section 371, you

22   could receive -- could receive -- a maximum sentence of five

23   years' imprisonment, a fine of $250,000, or twice the

24   pecuniary gain or loss from the offense under 18 United

25   States Code Section 3571(b)(2) and (3); you could receive a

1    term of supervised release of not more than three years; you

2    could have mandatory restitution imposed under 18 United

3    States Code Section 3663A; and you may have an obligation to

4    pay any applicable interest or penalties on fines and

5    restitution not timely made?  Do you understand all of that

6    is what could -- you could receive for Count 1?

7              THE DEFENDANT:  I do, Your Honor.

8              THE COURT:  Okay.  I'll note that -- I mentioned

9    just a moment ago the term "supervised release."  Supervised

10   release means that if you were sent to prison, then upon

11   your release, you would be under the supervision of the

12   Probation Office and expected to follow rules and conditions

13   while you were on release, and if you violated any of those

14   conditions, you could be sent back to prison for an

15   additional period of time.  Do you understand that, sir?

16             THE DEFENDANT:  I do, Your Honor.

17             THE COURT:  All right.  Now, do you understand --

18   as for Count 2, a violation of 18 United States Code Section

19   1512(c)(2), do you understand if I accept your guilty plea

20   for Count 2, you could receive a maximum sentence of 20

21   years of imprisonment, a fine of $250,000, or twice the

22   pecuniary gain or loss of the offense under 18 United States

23   Code Section 3571(b)(2) and (3); you could receive a term of

24   supervised release of not more than three years pursuant to

25   18 United States Code Section 3583(b)(2); you could have

1    mandatory restitution imposed under 18 United States Code

2    Section 3663A; and you may have imposed an obligation to pay

3    any applicable interest or penalties, again, on fines or

4    restitution not timely made?  Do you understand all of that

5    is what you could -- what could be imposed on you for Count

6    2?

7                THE DEFENDANT:  I do, Your Honor.

8                THE COURT:  All right.  And, again, it's important

9    to understand that I could never sentence you to more than

10   the statutory maximum term of imprisonment for either Count

11   1 or Count 2.

12               Do you also understand that you will have to pay a

13   special assessment of $100 for each of those counts -- so

14   for a total of $200 -- to the Clerk of the Court?

15               THE DEFENDANT:  I do, Your Honor.

16               THE COURT:  And do you understand, as part of this

17   agreement, you've agreed -- as Mr. Kasmarek just

18   mentioned -- you've agreed to pay restitution to the

19   Architect of the Capitol in the amount of $2,000?  Do you

20   understand that?

21               THE DEFENDANT:  I do, Your Honor.

22               THE COURT:  All right.  So let me pivot for a

23   moment to the sentencing guidelines which judges have to

24   consider in determining the sentence in every federal

25   criminal case.  I don't have to follow the guidelines --

1    it's, kind of, confusing -- I don't have to follow them, but

2    in determining your sentence, I do have to calculate them

3    and consider the applicable sentencing range recommended in

4    the guidelines for your offense with a person with your

5    criminal history.  As I mentioned, the guidelines apply in

6    every federal criminal case.

7            Again, have you and your attorney talked about the

8    advisory sentencing guidelines and how they might apply to

9    you?

10           THE DEFENDANT:  We have, Your Honor.

11           THE COURT:  Now, the parties have estimated in the

12   plea agreement what they think your guidelines sentencing --

13   sentence range is.  But do you understand I won't be able to

14   determine what your guidelines sentencing range is until

15   after what's called a presentence report is completed and

16   after you, your lawyer, and the Government have had an

17   opportunity to object to that report and tell me what they

18   think the applicable sentencing guideline range is?  Do you

19   understand that?

20           THE DEFENDANT:  I do, Your Honor.

21           THE COURT:  Now, part of your guidelines

22   sentencing range calculation is your offense level.  And the

23   parties have stated in the plea agreement what they estimate

24   your offense level to be at this point.  The parties have

25   agreed that the base offense level for Count 2 and

 1  conspiracy to -- the conspiracy to violate Section 1512(c),
 2  as charged in Count 1, is 14.  And with two enhancements
 3  because the offense involved property damage, and also,
 4  involved substantial interference with the administration of
 5  justice, the offense level rises to 25.  The parties have
 6  also agreed that the base level for conspiracy to violate 18
 7  United States Code Section 231, as charged in Count 1, is a
 8  10 with an enhancement for an official victim.  So that
 9  rises to 16.  And the Government agrees that you are
10  entitled to a two-level reduction if you accept
11  responsibility for your actions, adhere to the plea
12  agreement, and display acceptable conduct between now and
13  sentencing.  The Government also agrees that you're entitled
14  to an additional one-level reduction because you've provided
15  timely notice of your intent to plead guilty, saving the
16  Government the time and the resources to prepare for trial.
17  Therefore, netting all of that out, the parties estimate
18  that your guideline offense level will be a 22.  The parties
19  also estimate that you have zero criminal history points
20  which places you in Criminal History Category I for purposes
21  of the sentencing guidelines.  And the corresponding
22  recommended sentence range for an offense level of 22 and a
23  criminal history category of I is 41 months to 51 months of
24  imprisonment.  Do you understand that, Mr. Greene?
25              THE DEFENDANT:  I do, Your Honor.

1          THE COURT:  All right.  And the recommended fine

2     is between $15,000 and $150,000.  Do you understand that, as

3     well?

4          THE DEFENDANT:  I do, Your Honor.

5          THE COURT:  Okay.  Now, do you understand that if,

6     in your case -- in -- that in your case, the Government has

7     agreed to consider filing what's called a motion for

8     downward departure from your guideline range as a result of

9     your cooperation, but it's their decision, and only theirs,

10    whether or not to file a downward departure motion and that

11    neither your lawyer nor I can force them to file such a

12    motion?  Do you understand that?

13         THE DEFENDANT:  I do, Your Honor.

14         THE COURT:  All right.  Now, the Government can

15    refuse to file a motion for downward departure even if -- if

16    you've given assistance but not enough to satisfy them that

17    your assistance has been substantial.  Do you understand

18    that it's only the Government that determines whether your

19    assistance has been substantial?

20         THE DEFENDANT:  I do, Your Honor.

21         THE COURT:  All right.  And even if the Government

22    files a motion, do you understand that I make the final

23    determination on any motion by the Government for a downward

24    departure?  So I decide whether to grant that motion.  Do

25    you understand and -- understand that, Mr. Greene?

1          THE DEFENDANT:  I do, Your Honor.

2          THE COURT:  All right.  And, sir, do you

3     understand that the advisory guidelines sentence that is

4     eventually calculated may be either more severe or less

5     severe than the -- than what the parties have estimated in

6     the agreement?

7          THE DEFENDANT:  I do, Your Honor.

8          THE COURT:  Do you understand, again, that I won't

9     know exactly what -- your guidelines range until after I've

10    had a chance to review the presentence report that will be

11    prepared and hear from the parties in this case?

12         THE DEFENDANT:  I do, Your Honor.

13         THE COURT:  And do you also understand that after

14    I've decided -- after all of that -- after I've decided what

15    guidelines applies to your case, what the advisory guideline

16    range is, that at the end of the day, the guidelines aren't

17    binding on me and I have the authority, when I consider all

18    the sentencing factors that the law requires, to impose a

19    sentence that is either more severe or less severe than the

20    sentence recommended by the guidelines?

21         THE DEFENDANT:  I do, Your Honor.

22         THE COURT:  All right.  And do you understand that

23    you cannot withdraw your plea just because the sentence I

24    impose happens to be either more or less severe than the

25    sentence recommended by the guidelines or more or less

1    severe than the parties may recommend or request or more or

2    less severe than you happen to expect?  Do you understand

3    that?

4              THE DEFENDANT:  I do, Your Honor.

5              THE COURT:  All right.  Mr. Greene, let me give

6    you a quick preview of the factors I have to consider and I

7    have to take into account in determining your sentence.

8              In addition to the sentencing guidelines, I have

9    to consider the nature and circumstances of the offense;

10   your particular history and characteristics; I have to

11   consider whether the sentence serves the purposes of

12   criminal sentencing; that is, whether it reflects the

13   seriousness of the offense and whether it provides just

14   punishment; I have to consider whether it deters you and

15   others from engaging in criminal conduct; and I have to

16   consider whether it provides you with helpful treatment and

17   services that might be available and helpful to you; I have

18   to consider the kinds of sentences available; I have to

19   consider the sentencing guidelines, which we've already

20   discussed; and I have to ensure that the sentence in line --

21   is in line with sentences given to similar defendants who

22   have been found guilty of similar conduct; and I also have

23   to consider the need to provide restitution to any victims

24   of the offense.

25             Do you understand that I must consider all these

1    factors in selecting a sentence for you?

2              THE DEFENDANT:  I do, Your Honor.

3              THE COURT:  And finally, do you understand that if

4    I sentence you -- if I sentence you -- to a term of

5    imprisonment, you will serve the full amount of time to

6    which I sentence you with a possible reduction of -- for

7    good time of up to 54 days per year but that you will not be

8    released early on parole as used to be the case before

9    parole was abolished?  Do you understand that?

10             THE DEFENDANT:  I do, Your Honor.

11             THE COURT:  All right.  Finally, let's talk for a

12   moment about the appeal provisions in your plea agreement.

13             Do you understand that by pleading guilty, you are

14   giving up all your rights to appeal your conviction in this

15   case except on the basis of ineffective assistance of

16   counsel?

17             THE DEFENDANT:  I do, Your Honor.

18             THE COURT:  Do you understand that you're also

19   giving up your right to appeal the sentence imposed except

20   to the extent that I sentence you above the statutory

21   maximum or above the guidelines range that I -- (inaudible)?

22   Do you understand that?

23             THE DEFENDANT:  I do, Your Honor.

24             THE COURT:  Do you understand that under the plea

25   agreement, you're also giving up the right to what's called

1    collaterally attack your conviction -- sorry -- collaterally

2    attack the conviction or sentence except to the extent the

3    challenge, again, is either based on a claim that you

4    received ineffective assistance of counsel or based on

5    newly-discovered evidence?  Do you understand that?

6                 THE DEFENDANT:  I do, Your Honor.

7                 THE COURT:  All right.  Mr. Greene, that's a

8    summary of the terms of your plea agreement.

9                 Let me ask both counsel whether they agree that

10   we've -- I've accurately stated the terms of the agreement.

11                Mr. Kasmarek?

12                MR. KASMAREK:  We do agree, Judge.  Thank you.

13                THE COURT:  All right.  And, Mr. Kenerson?

14                MR. KENERSON:  Yes.  Thank you, Your Honor.

15                THE COURT:  All right.  Mr. Greene, is all of that

16   what you agreed to, sir?

17                THE DEFENDANT:  Yes, Your Honor.

18                THE COURT:  And are you completely satisfied with

19   the services of your lawyer in this case?

20                THE DEFENDANT:  I am, Your Honor.

21                THE COURT:  And have you had enough time to talk

22   with your lawyer and discuss the case, the charges, the plea

23   offer, and whether or not you should accept it?

24                THE DEFENDANT:  I have, Your Honor.

25                THE COURT:  Mr. Greene, are you entering this plea

1   of guilty because you are, in fact, guilty?

2            THE DEFENDANT:  I am, Your Honor.

3            THE COURT:  Has anyone forced, threatened, or

4   coerced you in any way into pleading guilty?

5            THE DEFENDANT:  No, Your Honor.

6            THE COURT:  Has anyone made any promises to you in

7   connection with your guilty plea other than those contained

8   in the written plea agreement or those stated in open court

9   here?

10            THE DEFENDANT:  No, Your Honor.

11            THE COURT:  Do you understand that at this time, I

12   do not know what sentence I will impose in your case

13   because, again, I have not yet heard from the lawyers, the

14   Probation Office, or from you if you choose?

15            THE DEFENDANT:  I do, Your Honor.

16            THE COURT:  Is there anything that you don't

17   understand about this proceeding or about your plea in this

18   case?

19            THE DEFENDANT:  No, Your Honor.

20            THE COURT:  And is there anything you want to ask

21   me or your lawyer about before your -- before you enter your

22   plea, sir?

23            THE DEFENDANT:  No, Your Honor.

24            THE COURT:  All right.  Mr. Greene, what is your

25   plea to Count 1 of the first superseding indictment charging

1    you with conspiracy, in violation of 18 United States Code

2    Section 371; and Count 2 charging you with obstruction of an

3    official proceeding, in violation of 18 United States Code

4    Section 1512(c)(2), guilty or not guilty?

5              THE DEFENDANT:  Guilty, Your Honor.

6              THE COURT:  All right.  I do find that Mr. Greene

7    is fully competent and capable of entering an informed plea;

8    that he understands the nature of the charges and the

9    consequences of the plea; that the plea of guilty is knowing

10   and voluntary and that he is acting of his own free will in

11   pleading guilty; and that there is an adequate factual basis

12   containing each of the essential elements of the offenses;

13   therefore, I accept the plea and the defendant is now

14   adjudged guilty of Counts 1 and 2 of the first superseding

15   indictment.

16             Mr. Kenerson, how do the parties wish to proceed

17   in terms of sentencing, especially given the cooperation

18   aspect of the plea agreement here?

19             MR. KENERSON:  Thank you, Your Honor.

20             I think we've -- I've -- we've talked about that

21   -- this with Mr. Kasmarek.  Our request is actually to set a

22   sentencing date today.  We expect this, in what we know, to

23   be able to go forward in the normal course to sentencing.

24   If, for some reason, that changes, we can move to continue

25   it.

1          THE COURT:  Very well.  Ms. Harris, can you give

2     us a proposed sentencing date.

3          THE DEPUTY CLERK:  Monday, March 14th.

4          THE COURT:  All right.  Why don't -- is setting it

5     for the 10th -- I think the -- is setting it for the 10th

6     too soon, do you think, Ms. Harris?

7          THE DEPUTY CLERK:  No, that's fine, because the 80

8     days actually fell on Saturday.  So that's why I pushed it

9     to the --

10          THE COURT:  Okay.

11          THE DEPUTY CLERK:  -- 14th.  But the 10th would be

12     fine because Probation has 70 days and we just add the extra

13     10 for the sentencing memoranda.

14          THE COURT:  All right.  I'd like to do -- I have

15     an availability on the 10th.  I'd like to do it on the 10th,

16     assuming counsel are available.  Let's say the 10th at 2:00

17     o'clock p.m.

18          Is -- Mr. Kenerson, are you available at that

19     time?

20          MR. KENERSON:  Your Honor, as of now, I am

21     scheduled to begin a trial on the 24th of February.  It

22     likely will be done by the 10th.  So I'm happy to set it

23     then, but if I'm in trial, we may be moving to continue.

24          THE COURT:  Okay.  If that happens or -- well,

25     what I could do is in -- additionally is perhaps -- perhaps

1   instead of setting it in the afternoon, I can set it in the

2   morning, and you may, you know -- that may increase the

3   likelihood that if your case is continuing on, the judge may

4   let you -- may give you a little time in the morning to deal

5   with the sentencing and then start after that.  So why don't

6   we say 9:00 -- is 9:00 -- would 9:30 work on the 10th, then?

7             MR. KENERSON:  That's good, Your Honor, with the

8   same caveats.  Thank you.

9             THE COURT:  Right.  Same -- understood.

10            Mr. Kasmarek -- and I guess I'll say this.  I've

11  been doing all my sentencings for quite a while -- I've been

12  trying to do them in person.  I think, you know, given the

13  nature of the proceeding, that's appropriate, and especially

14  given when -- given the fact that many defendants want to

15  address me, and I think my ability to, kind of, hear from

16  them is enhanced by having that proceed in person.

17            Mr. Kasmarek, do you know -- there are defendants

18  who, because of the quarantining and other issues, don't,

19  you know -- would, frankly, rather not do that, but that's

20  my inclination.  So let me ask you.  Do you know whether

21  Mr. Greene has a view -- do you and Mr. Greene have a view

22  about the nature of the proceeding we set?

23            MR. KASMAREK:  Yes, Judge.  We've -- we have

24  discussed it, and we concur with the Court completely; that

25  it's our preference that we be permitted to address the

```
 1    Court in person; that that's going to be critical to the
 2    Court making a determination to hear from Mr. Greene and as
 3    well as myself and Mr. Spano in person.  So it is our
 4    preference to be there.
 5              THE COURT:  Perfect.  We're all on the same page,
 6    then.  So is -- and is the 10th at 9:30 available to you
 7    all?
 8              MR. KASMAREK:  It is, Judge.  Thank you.
 9              THE COURT:  Okay.  So we'll set it for that time
10    and we'll set it for in-person.  And I usually just ask the
11    parties to file their sentencing memoranda a week
12    beforehand.  So that would be by March 3rd.
13              Let me ask, I guess, Mr. Kenerson this question.
14    I, you know -- in many cases, setting the memos to be
15    simultaneous makes sense.  My gut tells me that that is fine
16    in this case, but there are other cases where the Government
17    perhaps -- well, whether it's the Government wanting to
18    respond to the defense or vice versa, the parties like the
19    -- prefer a -- staggered, sort of, submissions.  What -- let
20    me just start with Mr. Kenerson.  What's your sense about
21    whether that is something that makes sense here or whether
22    having them set on the same day is fine?
23              MR. KENERSON:  I think that's fine from the
24    Government's perspective to have them due on the same day,
25    but if Mr. Kasmarek prefers staggered, we don't have an
```

1    objection to that either.

2                THE COURT:  Okay.  Mr. Kasmarek, what's your view?

3                MR. KASMAREK:  Judge, we have no objection filing

4    them on the same date.  Mr. Kenerson, myself, Mr. Greene,

5    Mr. Spano, we've had the opportunity over the past couple

6    months to engage in some very detailed discussions about all

7    aspects of this case.  And so I think we're all pretty well

8    informed about each other's positions.  So --

9                THE COURT:  There won't be -- there won't be

10   surprises that you feel you need to --

11               MR. KASMAREK:  I don't think so, Judge.

12               THE COURT:  All right.  So we'll make them due,

13   then, March 3rd.  Very well.

14               All right.  Mr. Greene, let me just quickly remind

15   you about how sentencing will work.  A written presentence

16   report is going to be prepared by the Probation Office to

17   assist me at sentencing.  You will be asked to give

18   information to that report and your attorney may be present

19   if you wish.  You and your lawyer will have the opportunity

20   to read the report before I see it and, again, before your

21   sentencing and object to anything in the report you think it

22   is appropriate to do so.  And you and your lawyer,

23   obviously, will have an opportunity to speak with me at your

24   sentencing hearing.

25               All right.  I suppose the Government will request

1    that Mr. Greene remain detained pending sentencing; is that

2    correct, Mr. Kenerson?

3              MR. KENERSON:  That's correct, Your Honor.

4              THE COURT:  All right.  I think probably,

5    Mr. Kasmarek, you've agreed to that in the plea agreement,

6    but you'll correct me if I'm wrong.

7              MR. KASMAREK:  We have, Judge, and we're prepared

8    to move forward with Mr. Greene remaining detained and to

9    address those arguments at sentencing.

10             Judge, one quick question with respect to the

11   presentence report.  Does the Court or Mr. Kenerson know,

12   will the officer be visiting Mr. Greene in person?  Will

13   they set up a virtual interview of him?

14             THE COURT:  I don't think -- I -- well, I don't

15   know for sure the answer.  My sense is that they have tried

16   to do them remotely, but, maybe, Mr. Kenerson might have

17   additional or different information.

18             MR. KENERSON:  I actually don't have any

19   information either way --

20             THE COURT:  Okay.

21             MR. KENERSON:  -- to add.  So I don't know.

22             THE COURT:  Okay.  Yeah.  Mr. Kasmarek, you can --

23   obviously, you can follow up --

24             THE DEPUTY CLERK:  Judge, I have an answer to

25   that.

1           THE COURT:  All right.  Ms. Harris, thank you,

2      once again.

3           THE DEPUTY CLERK:  They have been conducting them

4      remotely.

5           THE COURT:  Oh.  They have?  Okay.  Yeah, that was

6      my impression, as well.

7           MR. KASMAREK:  Right.  I appreciate that.  I just

8      want to prepare Mr. Greene for how it's --

9           THE COURT:  Yep.

10          MR. KASMAREK:  -- going to proceed.  Thank you.

11          THE COURT:  Yep.  Very well.

12          All right.  Anything else either side thinks we

13     need to address today?

14          Mr. Kenerson?

15          MR. KENERSON:  No, Your Honor.  Thank you.

16          THE COURT:  All right.  Mr. Kasmarek?

17          MR. KASMAREK:  No, Your Honor.  Thank you.

18          THE COURT:  All right.  Very well.  We will --

19     I'll see everyone in March.  Until then, everyone have a

20     good holiday and New Year, and the parties are dismissed

21     until then.

22          MR. KASMAREK:  Appreciate that, Judge.  Thank you.

23          MR. KENERSON:  Thank you, Your Honor.

24          (Proceedings concluded at 2:48 p.m.)

25          *  *  *  *  *  *  *  *  *  *  *

1            <u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>

2        I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify

3   that the above and foregoing constitutes a true and accurate

4   transcript of my stenographic notes and is a full, true and

5   complete transcript of the proceedings to the best of my

6   ability, dated this 6th day of January 2022.

7        Please note:  This hearing occurred during the COVID-19

8   pandemic and is, therefore, subject to the technological

9   limitations of court reporting remotely.

10                       /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                         Official Court Reporter
11                       United States Courthouse
                         Room 6722
12                       333 Constitution Avenue, NW
                         Washington, DC 20001