```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
----------------------------X

 UNITED STATES OF AMERICA                    REDACTED

                  v.            Criminal Case 21-052-TJK-3

MATTHEW GREENE,

            Defendant

----------------------------X
                                     Washington, D.C
                                     Thursday, March 10, 2022
                                     3:00 p.m.

         TRANSCRIPT OF A VIDEO STATUS CONFERENCE
           BEFORE THE HONORABLE TIMOTHY J. KELLY
              UNITED STATES DISTRICT JUDGE
APPEARANCES:

For the Government:       Erik Michael Kenerson, AUSA
                    U.S. ATTORNEY'S OFFICE -  D.C.
                    555 Fourth Street, NW, Suite 11-449
                    Washington, DC 20530
                    (202) 252-7201

For the Defendant:  Michael Adam Kasmarek, I, Esq.
                    KASMAREK LAW OFFICE, PLLC
                    440 East Washington Street
                    Syracuse, NY 13202
                    (315) 552-5620




Court Reporter:     Lisa Walker Griffith, RPR
                    U.S. District Courthouse, Room 6507
                    Washington, D.C.  20001
                    (202) 354-3247
```

```
                    P R O C E E D I N G S
 1
 2            THE COURTROOM DEPUTY:  We're on the record in
 3   criminal matter 21-52, defendant three, United States of
 4   America versus Matthew Greene.  Present for the government is
 5   Erik Kenerson.  Present for the defendant is Michael
 6   Kasmarek.  Present from Pretrial Services is Christine
 7   Schuck.  Also present is the defendant, Mr. Greene.
 8            THE COURT:  All right.  Good afternoon to everyone.
 9   We are here for a status conference.  Originally this was
10   scheduled for Mr. Greene's sentencing but I converted it to a
11   status at the parties' request.
12            So why don't I just turn I guess first to the
13   government and ask where the parties would like to go from
14   here.
15            MR. KENERSON:  Certainly, Your Honor.  I think
16   ultimately our request is going to be that we do not set
17   another sentencing date today; that we file a status report
18   in about 60 days.  I believe that Mr. Kasmarek is planning to
19   make a motion.  Assuming he does, we can state our position
20   after that.
21            THE COURT:  All right.  Mr. Kasmarek.
22            MS. KASMAREK:  Yes, Judge.  Thank you.  And thanks
23   for hearing us remotely.  It certainly makes thing easier
24   from our end.
25            Judge, we are making a motion to have Mr. Greene
```

1    released to home confinement at this time.  And certainly

2    Judge, if that motion is granted, we do not have any

3    objection to a 60 day status conference.

4            THE COURT:  All right.  Tell me why now, the status

5    -- putting aside the 60 day report, the standard here is that

6    I have to find clear and convincing evidence that Mr. Greene

7    is not likely to flee or pose a danger to the safety of any

8    other person or the community if released, under 18 United

9    States Code 3143.  So tell me why that standard is met, and

10   then of course I'll hear from Mr. Kenerson.

11           Actually, before we do that, I assume some of your

12   -- Should we do the following?  I suspect some of what both

13   parties may want to raise we may have to deal with under

14   seal.  So my thought is perhaps we can go under seal in the

15   first instance.  You all can make whatever representations

16   you want to make to me under seal.  Then probably the bulk of

17   what you're going to be arguing to me is not, need not be

18   under seal.  Then we can come back out and we can have the

19   rest of the argument that way.

20           Does that sound reasonable to you, Mr. Kasmarek?

21           MS. KASMAREK:  Absolutely, Judge, thank you.

22           THE COURT:  Mr. Kenerson, does that sound reasonable

23   to you?

24           MR. KENERSON:  Yes, Your Honor.  Thank you.

25           THE COURT:  All right.  So let's now proceed at

1   least for a short period, Ms. Harris, under seal in order for

2   the parties to make whatever representations they would like

3   to make.

4           THE COURTROOM DEPUTY:  I have placed the public line

5   into the waiting room.

6  (The following is sealed and redacted by Order of the Court.)

16          (Open Court)

17          THE COURT:  So Mr. Kasmarek, let me hear from you.
18  Then obviously in addition to what we've discussed under
19  seal, why don't I hear from you about the reasons why you
20  think I can find by clear and convincing evidence that your
21  client will not flee or pose a danger to the community and
22  thus should be released with whatever conditions we can come
23  up with.
24          MS. KASMAREK:  Judge, thank you.  I suppose to go in
25  reverse order, regarding whether Mr. Greene poses a danger,

1    again as this Court is well aware, Mr. Greene stands by the
2    admission that he made before this Court.  He stands by the
3    terms of the plea agreement.
4            However, as the Court is aware from the statement of
5    offense in this case, there is no allegation that Mr. Greene
6    used violence on January 6th, no allegation that he carried a
7    weapon of any kind, including some of the type of sprays that
8    were used on officers.  There is no allegation or any proof
9    that he assaulted or did any physical injury to any member of
10   law enforcement.  And of course, judge, there is no evidence
11   that the government has that we've seen that Mr. Greene
12   actually entered the Capitol.
13           Certainly Judge, perhaps most importantly, his
14   complete lack of criminal history up until this point in his
15   life, his standing in the community, his place amongst his
16   peers up here in New York, certainly Judge, he has a lot to
17   lose.
18           As I pointed out previously, he is anxious to begin
19   his road to redemption and this is obviously part of it.  He
20   understands the position he's in.  I can certainly attest
21   that he would not jeopardize that position by committing any
22   other independent acts that would call his disposition in
23   this case into question.
24           Judge, regarding flight, Mr. Greene has taken steps
25   to take account for what has occurred in this case.  And that

1   process has been long and has involved quite a few steps
2   along the way.  All of this is done with the idea that we are
3   going to return to court, that Mr. Greene is going to be able
4   argue for an appropriate sentence before this court.  Him and
5   I have had many discussions about that argument.  We have our
6   brief prepared and to be submitted.
7            Mr. Greene is also aware that, if the Court were to
8   grant this motion, there is a significant chance, a
9   significant likelihood that he will still have to potentially
10  serve some time after.  He understands that very well.  He is
11  prepared to pay his debt to society and again move forward on
12  the path to redemption.  He understands that any flight, any
13  non adherence to these specific terms would jeopardize all of
14  the things he has worked fairly hard to achieve in this case
15  and what we have sought to achieve.
16           So Your Honor, it is all position that all those
17  factors together, this Court has clear and convincing
18  evidence that Mr. Greene, number one, is not a danger to
19  himself or to the community at large.  And certainly, Judge,
20  he is not a danger as far as flight goes.  He will return to
21  court and he will abide by the terms that this court sets.
22  Thank you.
23           THE COURT:  All right.  Before I hear from the
24  government, so let me check through, see if I understand your
25  argument.  First I do have no criminal history before this

1  event whatsoever.  Is that right, Mr. Kasmarek?

2          MS. KASMAREK:  That is correct, judge.

3          THE COURT:  We have, obviously it's significant that
4  he has taken responsibility for his actions.  He has pled
5  guilty to a series of some very serious offenses.  But he
6  has, it does just show his remorse and it does show his
7  willingness to take responsibility as his plea agreement
8  contemplates, cooperation is another serious tick in his
9  favor.

10         I agree with you we don't have any acts of violence
11 on his part.  He has not pled guilty to anything that would
12 be considered to be -- I have not seen any evidence that he
13 committed any violence on his part on January 6th.  He does
14 have a situation where --  and while he didn't in his offense
15 admit to some preparation and planning for that day, I do
16 think we do have a situation where I wouldn't call, there is
17 no evidence that he was a leader in the conspiracy, at least
18 not that I can see.

19         I do want to ask one of the conditions that we
20 talked about here is that there would be no, that he would
21 not be able to possess any firearms.  That there would be no
22 firearms in the home.  So as I understand it -- why don't you
23 give me an update on -- as I recall, there were firearms
24 found in the home when he was originally arrested in the
25 case.

1            Those, I understand, have been seized and he doesn't
2    have access to them right now, number one, and number two,
3    there may have been firearms that remained that have been
4    removed from the home.  What can you tell me about the
5    standard of firearms because that seems to me to be a big --
6    even with Mr. Greene's lack of any criminal history, that is
7    I think a big factor.
8            MS. KASMAREK:  Yes, Judge, certainly.  Judge, the
9    Court is correct, there were two handguns and assault weapon
10   that was seized from Mr. Greene's home.  Those remain in the
11   custody of the State authorities here in Onondaga County.
12   There was a statement that was filed against Mr. Greene
13   relative to those charges.
14           We've had some preliminary discussions, Judge.
15   They're non-violent felonies, relatively low level.  I do
16   believe that we're going to be able to resolve those in a
17   manner that is at least concurrent to the punishment that
18   Mr. Greene is expecting with respect to this case, although,
19   because the pendency of this case is sort of the primary
20   concern, we have not gotten into too much depth as to how
21   those charges will be resolved.
22           As the Court is aware and just mentioned, there were
23   two long guns that were left at Mr. Greene's residence as
24   well as a quantity of ammunition because his possession of
25   them at the time was not against any state or federal law.

1   Those have all been removed from the home in anticipation
2   both of sentencing and a change of circumstances here.
3             So Mr. Greene is also acutely aware that this is an
4   issue.  And he understands exactly the nature of what his
5   obligations are to be nowhere near any firearms.
6             THE COURT:  All right.  Very well.
7             Mr. Kenerson, I will hear from you on the
8   government's position.
9             MR. KENERSON:  Thank you, Your Honor.  The
10  government's position has been largely stated in the under
11  seal filing we submitted yesterday and then the under seal
12  colloquy that we just underwent, or at least the government's
13  reasons.
14            The government's position is that, per our
15  discussion with Pretrial Services, we do not oppose his
16  release to home incarceration under the strict conditions
17  imposed by Pretrial.
18            THE COURT:  Ms. Schuck, you are on the line,
19  correct?
20            THE PRETRIAL SERVICE OFFICER:  Yes, Your Honor.
21            THE COURT:  All right.  Why don't you go through,
22  why don't we walk through the conditions that Pretrial is
23  proposing in a way that, number one, Mr. Greene, you can be
24  explaining it to Mr. Greene while we go, and you can be
25  explaining it, you can be putting it on the record for me to

1  consider at the same time, just so we're all on the same page
2  about what is being proposed to.
3         And with regard to 7(g), avoiding contact with
4  anyone who could be a victim or witness, I would modify that
5  to be anyone who participated in the January 6th attack on
6  the U.S. Capitol that he would have the stay away from.  Why
7  don't you walk through what it is being proposed here.  And
8  it is, I would emphasize, home incarceration, which is the
9  most severe form of detention outside actually being
10 incarcerated.  It is the most severe form of location
11 monitoring that is available in a situation like this.
12        THE PRETRIAL SERVICE OFFICER:  Thank you, Your
13 Honor.  Pretrial Services for both the District of Columbia
14 and the Northern District of New York have collaborated and
15 are requesting the following conditions.  That he be placed
16 on location monitoring and under home incarceration.  That he
17 report to the U.S. Probation Office for the Northern District
18 of New York located at 100 South Clinton Street in Syracuse,
19 New York at 12:00 p.m. tomorrow, March 11, to be placed on
20 location monitoring.
21        Thereafter, we ask that he report to their office as
22 directed.  He is to surrender any passport to the U.S.
23 Probation Office for the Northern District of New York.  He
24 is not to obtain a passport or any other international travel
25 document.  He is to live at his designated address.  We ask

1    that he stay away from D.C., except for court business,
2    pretrial business or meeting with his attorney.  That, his
3    travel be restricted to the Northern District of New York
4    unless approved by Pretrial Services or the Court.  The
5    stay-away condition, that he stay away from anyone who
6    participated in the January 6th attack on the U.S. Capitol.
7            That he report to the U.S. Probation Office for the
8    Northern District of New York for a mental health evaluation
9    and comply with all  treatment recommendations, sign all
10   required releases of information to obtain and report
11   treatment compliance for the Court.  That he not possess a
12   firearm, destructive device or other weapon, and there be no
13   firearm in the home.  That he not use alcohol at all.  That
14   he submit to substance abuse testing, and participate in any
15   in-patient or outpatient substance abuse therapy or
16   counseling as directed by the Pretrial Services Supervising
17   Officer.
18           As it will be home incarceration, he is going to be
19   placed at this time on GPS monitoring but we're asking that
20   the technology that is utilized be at the discretion of the
21   Northern District of New York.  That he pay for the location
22   monitoring based on his ability to pay for it as determined
23   by the Northern District of New York.  And he reports any
24   contact with law enforcement to the Northern District of New
25   York within 72 hours.  And finally, that he abide by the

```
 1    terms of the plea agreement.  Thank you, Your Honor.
 2            THE COURT:  Thank you.  And Ms. Schuck, why don't
 3    you just add -- it's home incarceration.  Just for Mr. Greene
 4    sake, what does that mean in practicality?
 5            THE PRETRIAL SERVICE OFFICER:  Sure.  Home
 6    incarceration means that you are restricted to your home 24
 7    hours a day, with the exception of medical necessities and
 8    court appearances, or other activities approved by the Court.
 9            THE COURT:  All right.  Well this is, I'll be
10    honest, this is a close call.  I do think I can meet the
11    statutory standard here but it's close.  And I do think the
12    things I ticked through before are some of the reasons why.
13    Just pull out, just get the standard here.  I do think I can
14    find clear and convincing evidence that Mr. Greene is not
15    likely to flee or pose a danger to the safety of any other
16    person or the community if released.
17            Number one, I caveat that with, if we released under
18    the conditions that we laid out right here, that Ms. Schuck
19    has laid out.  But I think the key things to me are, number
20    one, no criminal history whatever, before today, for the
21    events for which he pled guilty here.  That is pretty
22    significant.
23            Number two, that he is taking responsibility.  That
24    he has pled guilty and the plea agreement contemplates
25    cooperation, shows both his remorse for what he has done, his
```

1     intention to make amends and his incentive to comply and to
2     both return to court for sentencing and to comply with his
3     other conditions.
4            I think it's significant that, while he has pled to
5     very serious offenses, including a conspiracy offense, there
6     is no evidence that he was a leader in that effort.  He is
7     not charged with, there is no evidence that he engaged in
8     acts of violence against any person or any particular
9     property on January 6.
10           And in this case, while he did have some firearms in
11    the home, those firearms are no longer present and it will be
12    a condition of release that he not possess any firearms.  All
13    of those factors, plus the fact that he will be subject to
14    home incarceration, the most strict form of release, I think
15    I can find that under the legal standard, here, is met.  So I
16    will release him subject to the conditions Ms. Schuck has
17    laid out.  But it's a close call admittedly.  But I think we
18    get over the hump.
19           Let me ask Ms. Harris, will you swear Mr. Greene --
20           First of all, Mr. Greene, do you have any questions
21    about any of those conditions of release that Ms. Schuck went
22    through with you?
23           THE DEFENDANT:  No, Your Honor.
24           MS. KASMAREK:  Judge, not to interrupt you, this is
25    more practical.  Mr. Greene's wife is prepared to pick him up

1    from the facility he's at, but it's about two hours south of
2    Washington.  I did drive it at one point.  I stopped once,
3    and I was going hard and it took me a solid eight hours to go
4    from Syracuse to the location.  I know at 12:00 tomorrow, I'd
5    just ask Pretrial Services is there a way that Mr. Greene
6    could phone in and update?  I just don't want them to be in a
7    position where him and  his wife are driving through the
8    night to try to get there and put themselves in a dangerous
9    situation.
10            THE COURT:  Right.  To be clear, the 12 p.m., is
11   that noon or midnight that we're looking at here on the
12   conditions?
13            Ms. Schuck, what time was it contemplated that
14   Mr. Greene would report?.
15            THE PRETRIAL SERVICE OFFICER:  It would be 12 p.m.
16   noon tomorrow.
17            THE COURT:  Noon. All right. Ms. Schuck, do you
18   know whether, to allow for what Mr. Kasmarek mentioned, do
19   you know of a reason we couldn't make that 2:00 p.m., just to
20   give a little bit more time so we don't have a situation
21   where they get so tired that it becomes dangerous?
22            THE PRETRIAL SERVICE OFFICER:  I can enter that into
23   the order and I can alert the Northern District to New York
24   to expect them at 2 P.M.
25            THE COURT:  You don't know of any magic reason why

1   it had to be noon, I guess is my question.

2           THE PRETRIAL SERVICE OFFICER:  No.  I think we're

3   just looking at it to have the bracelet put on as soon as

4   possible.

5           THE COURT:  Right.  No, I get it.  We need to have

6   it done well before the close of business tomorrow.  But I

7   think modifying that maybe to make it -- at least give them a

8   little bit more breathing room.

9           Mr. Kenerson, do you have any objection to that?

10          MR. KENERSON:  No, Your Honor.

11          THE COURT:  So let make it 2 p.m. tomorrow to give

12  them a little extra time.  The close of business tomorrow.

13          MS. KASMAREK:  I'll be on top of the situation, too,

14  Judge.  I'll make sure that it's taken care of.

15          THE COURT:  Ms. Harris, why don't you swear

16  Mr. Greene to those conditions.

17          (The defendant was sworn to abide by his conditions

18  of release.)

19          THE COURT:  Mr. Greene, I'm just going to, this is

20  going to be on a piece of paper that will contain your

21  conditions of release but I am going to just walk through

22  with you the potential penalties you face if you were to

23  violate any of those conditions, okay?

24          So violating any of the conditions of release could

25  result in the immediate issuance of a warrant for your

arrest, a revocation of your release, an order of detention and prosecution for contempt of court which could result in imprisonment, a fine or both.

While on release, if you commit a federal felony offense, the punishment is an additional prison term of not more than 10 years, and for a federal misdemeanor offense, the punishment is an additional prison term of not more than one year. And that sentence would be consecutive, i.e. in addition to any other sentence you receive for offenses for which you've pled guilty.

It is a crime punishable by up to 10 years in prison, and a $250,000 fine or both, to obstruct a criminal investigation, to tamper with a witness, victim or informant, retaliate or attempt to retaliate against a victim, witness or informant, or intimidate or attempt to intimidate a witness, victim, juror, informant or officer of the Court. And the penalties for tampering, retaliation or intimidation are significantly more seriously if they involve killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you could be prosecuted for failing to appear or surrender and additional punishment could be imposed. If you are convicted of one -- if you were subsequently convicted of an offense punishable by death, life imprisonment or

1  imprisonment for a term of up to 15 years or more, you could
2  be fined not more than $250,000 or imprisoned for not more
3  than 10 years or both.  Again,  if you were subsequently
4  convicted of the offense punishable by imprisonment of five
5  years or more, but less than 15 years, you could be fined not
6  more than $250,000 or imprisoned for not more than five years
7  or both.
8         For any other felony, you could be fined not more
9  than $250,000 or imprisoned not more than two years or both.
10 But a misdemeanor, you could be fined not more than $100,000
11 or imprisoned for not more than one year or both.
12        Any term of imprisonment imposed for failure to
13 appear or surrender would be consecutive to any other
14 sentence you receive.  And in addition, a failure to appear
15 or surrender could result in forfeiture of any bond posted
16 here.
17        So do you understand all those consequences,
18 Mr. Greene, what can happen if you either violate one of your
19 conditions of release or fail to appear?
20        THE DEFENDANT:  I do, Your Honor.
21        THE COURT:  Mr. Kasmarek, given that the defendant
22 will be released with those conditions, the parties agree
23 that, to file a -- basically, a notice updating the Court
24 about if the parties have any more clarity on exactly when
25 sentencing will proceed.  So let me propose that that notice

1   be filed May 13th, which is Friday, just a few days after
2   what would be 60 days.
3           With that, is there anything further, Mr. Kasmarek,
4   that you think I need address here today?
5           MS. KASMAREK:  No, Judge, May 13th is fine.  And we
6   appreciate the Court's consideration.  Thank you.
7           THE COURT:  All right.  Mr. Kenerson, same question
8   to you, sir.
9           MR. KENERSON:  No, nothing further from the
10  government and thank you for taking us today, Your Honor.
11          THE COURT:  Very well.  I'll look for that update on
12  May 13th.  And in the meantime, obviously, if anything comes
13  up that the parties need my intervention for, you all know
14  where to find me.  Until then, the parties are dismissed.
15          (Whereupon, at 3:43 p.m., the hearing adjourned.)

CERTIFICATE OF REPORTER

I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of the remotely reported proceedings in the above-entitled matter.

Please Note: This hearing was held in compliance with the COVID-19 pandemic and the standing orders of this court, and is therefore subject to the technological limitations of court reporting remotely, including static, signal interference and other restrictions.

_____    3-25-2022
Lisa Walker Griffith, RPR                  Date